UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YOOMI BABYTECH, INC.,

                Plaintiff,

– against –

ANVYL, INC.; VITALPURE, LLC; FEEL WELL, LLC; and LEGACY CHEMICAL CORPORATION,

                Defendants.

**OPINION AND ORDER**
20 Civ. 7933 (ER)

Ramos, D.J.:

Yoomi Babytech, Inc. ("Yoomi") brings this action against Anvyl, Inc., VitalPure LLC, Feel Well, LLC, and Legacy Chemical Corporation, alleging, *inter alia*, breach of contract in connection with defendants' failure to deliver hand sanitizer to Yoomi. Pending before the Court is Anvyl's motion for sanctions against Yoomi for committing fraud on the Court by producing a forged email, and related motion for oral argument. Docs. 136, 139. For the reasons set forth below, Anvyl's motion is DENIED.

## I. BACKGROUND[1]

### *The Failed Hand Sanitizer Venture*

The Court assumes familiarity with its prior September 22, 2021 Order in which the Court dismissed the claims of fraud, fraudulent inducement, negligent misrepresentation, tortious interference, and punitive damages for failure to state a claim as to all defendants. Doc. 106. The Court includes here only the factual background necessary to resolve the instant motion. *Id.*

---

[1] Unless otherwise indicated, citations to ¶ _ refer to the second amended complaint ("SAC"), Doc. 78.

The instant action arises out of the venture of Yoomi, a Canadian manufacturer of household goods, to manufacture hand sanitizer for distribution and sale at large retailers in the United States in the midst of the COVID-19 pandemic.  ¶¶ 5, 11; *see* Doc. 137, Memorandum in Support of Motion to Dismiss, at 6.  In 2020, Yoomi arranged to sell a large volume of hand sanitizer to Albertsons Companies LLC ("Albertsons"), the second largest grocery chain in the United States.  ¶¶ 12–13.  To manage the production and delivery of the hand sanitizer, Yoomi enlisted the expertise of Anvyl, a "high-quality turnkey supply chain supplier company."  *Id.* ¶¶ 14, 19 –21.

On May 10, 2020, the companies entered into a hand sanitizer supply agreement (the "Agreement"), in which Anvyl agreed to provide Yoomi a reliable, ongoing supply of bottled, Yoomi-branded hand sanitizer.  ¶ 22; *see* Doc. 66-2.  Pursuant to the payment schedule in the Agreement, upon Anvyl's acceptance of a purchase order, Yoomi or an authorized affiliate was to pay Anvyl 30% of the purchase price and the remaining 70% on shipment.[2]  *Id.* at 3.  The Agreement further specified that the failure of Anvyl to fill an order would constitute a material breach of the Agreement unless Anvyl cured the breach within 15 days.  *Id.* at 2–3.  The Agreement also included a limited warranty, whereby Anvyl guaranteed the hand sanitizer to be free from defects and conform to the regulatory requirements of the Federal Drug Administration ("FDA").  *Id.* at 4.  A mockup of what the product would look like was depicted in Schedule A of the Agreement.  *Id.* at 8.  This mockup showed the front and back of a bottle of hand sanitizer, with a Yoomi-branded label and clear liquid inside.  *Id*.

On May 20, 2020, Yoomi secured its first purchase order from Albertsons for 1,032,192 16oz bottles of hand sanitizer (the "Albertsons Order"), the equivalent of 28 truckloads of

---

[2] The Agreement provided a purchase price of $2.09 per 8oz bottle, and $2.52 per 16oz bottle.  Doc. 138-2 at 8.

product.[3]  ¶ 25.  A business affiliate of Yoomi, non-party Cohen Friedberg and Associates, LLC ("CFA"), obtained the Albertsons Order through a business broker: non-party Dennis Donchez, of Xtreme Solutions. *See* Doc. 145, Affidavit of Dennis Donchez in Opposition to the Motion to Dismiss ("Donchez Decl."), at 1, ¶ 1.  On May 20, 2020, Donchez emailed the Albertsons Order to Eric Friedberg, a partner of CFA, along with the following message: "Here are the [purchase orders] for May 28th and May 29th.  If you have any questions, please let me know."[4]  Doc. 138-15.  On May 21, 2020, Friedberg responded to Donchez, raising various issues with the terms of the Albertsons Order:

> Thank you for the first two days of the [purchase orders].  We see many a few mistakes in these [purchase orders] in regards to terms which say net 30, which should be net 48 hours as discussed.  The pack size shows 12 when its 32.  The bottle size shows 16 and its 16.9.  The list cost is $45.60 and it should be $121.60 – not sure if that matters but it should be fixed.  The term issue is huge and has to be net 48 hours. Also, where are the remaining 8 days of [purchase orders] and we should get these numbers fixed now as the factory will look at this as incomplete order.  We can't even show the factory this as its only 180k bottles. When can we get the remaining 8 days and how do we correct the [purchase orders]?"

Doc. 138-15.

Also on May 21, 2020, Will Davis of Anvyl wrote to Scott Bradley, the chief executive officer of Yoomi, asking him to send a corrected version of the Albertsons Order and issue payment to Anvyl by May 22, 2020 so that production could go forward:

> I understand you are getting the PO with the correct information. We haven't seen the wire payment to make up the balance of the PO. Can you advise status? Our filler is stating that they must have PO and payment tomorrow morning in order to hold the alcohol for the expected order.  They will give the alcohol to another customer if they don't receive by noon. Can you please advise on this PO and wire?

---

[3] Around this time, Yoomi secured a second purchase order for 35,328 bottles of hand sanitizer from Becton, Dickinson and Company ("BD"), a medical supply company.  ¶¶ 13, 26.  The SAC does not specify a date for when BD placed this order.

[4] Copies of the actual purchase orders are not presently before the Court.

Doc. 138-14. Sometime thereafter, Yoomi or CFA sent Anvyl the corrected Albertsons Order and issued payment. ¶ 25. According to the SAC, Anvyl and VitalPure[5] assured Yoomi that 28 truckloads of hand sanitizer would begin shipping by May 28, 2020. ¶ 41.

Anvyl and VitalPure failed to deliver the hand sanitizer to Albertsons by May 28, 2020. ¶ 41. The deadline was then extended, but Anvyl and VitalPure missed that deadline, as well.[6] *Id.* Albertsons was frustrated by the shipping delays and revisions to the Albertsons Order. *Id*; *see also* Doc. 144, Affirmation of Scott Bradley in Opposition to the Motion for Sanctions ("Bradley Decl."), at 4, ¶ 11 (Tammy Knoll, a Yoomi product broker, writing to Yoomi on May 27, 2020: "If we have to go back to Albertsons again on this deal, we may lose it, plus any future opportunities. This deal is in jeopardy now. They were not happy with having to revise every [purchase order] 2 times, so I can't imag[ine] what they will say if we go back to them again.").[7]

According to Yoomi, the delay was caused by the following mistakes made by Anvyl and VitalPure: (1) Anvyl failed to obtain proper labels, trays, and bottle caps for the sanitizer, ¶¶ 34–36; (2) Anvyl failed to timely procure an FDA National Drug Code to register the product with the FDA, ¶ 37; (3) VitalPure was understaffed, ¶ 38; (4) the sanitizer formula was too thick to

---

[5] VitalPure, a subsidiary of Feel Well, is the manufacturer that produced and bottled the Yoomi hand sanitizer. ¶ 28.

[6] The SAC does not specify the due date of the extended deadline.

[7] A copy of the May 27, 2020 email from Knoll to Yoomi has not been produced to the Court. Bradley quotes from this email in his affirmation.

4

properly flow through the VitalPure filling nozzles,[8] ¶ 39; and (5) VitalPure packed the sanitizer with the wrong number of bottles per shipping box, ¶ 40.

On June 8, 2020—after Anvyl had received at least *some* of the hand sanitizer—LaDawn Weeks, a national sales manager of Albertsons, emailed Donchez: "We want to address the cloudiness of the product! What is going on with all of the various stages of clarity of the product?? Is it safe? Need to be recalled?" *See* Bradley Decl. at 3, ¶ 9.[9]

That same day, Davis emailed Jason Hoar of VitalPure: "Albertsons has called out that they are seeing formula variation regarding the clarity of the product. They have a product that is clear, hazy, and opaque. Can you confirm the reason for this?" *See* Bradley Decl. at 61, Ex. 3. Also on June 8, 2020, the chief executive officer of Anvyl, Rodney Manzo, emailed Hoar: "I believe there was going to be something technical sent out from your chemist. Albertsons is saying they are going to pull this order. Can we get something that is more technical and gives reassurance?" *Id.* at 62.

On June 18, 2020—after Albertsons had received approximately 700,000 bottles of hand sanitizer—Lauren Woerner, of Albertsons, emailed Donchez that Albertsons was canceling its outstanding Yoomi orders for three reasons: (1) the product was three weeks late; (2) "[a]ll [purchase order] and location changes[;]" and (3) the product was "selling extremely slow at store level." Doc. 138-3.

---

[8] On June 1, 2020, Donchez wrote in an email to Bradley: "It is not just the caps. That was the problem but that was fixed. The gel is too thick and they are adding heaters to the lines right now as we speak. I literally have no words for this order." Bradley Decl. at 4 ¶ 11.

Like the May 27, 2020 email, a copy of the June 1, 2020 email is not presently before the Court. Bradley quotes from this email in his affirmation.

[9] The Bradley Affirmation quotes from the June 8, 2020 email from Weeks to Donchez. But a copy of it is not before the Court.

Ten days later, on June 28, 2020, Tami Tollefson, a vice president of Albertsons, emailed Weeks, Albertsons' national sales manager, an image of a Yoomi hand sanitizer bottle that contained yellow liquid. Doc. 138-6. In her email, Tollefson wrote: "Let's discuss this image[.] Yellow??" *Id*. Weeks responded two minutes later: "Holy crap! That's awful! I haven't seen that one before. Do you want me to send [the image] to [Donchez] for an explanation[?]" *Id*. Later that evening, Tollefson wrote back: "Yes pls[.] I would like to recall their product if they can't provide an explanation." *Id.*

Approximately five minutes later, Weeks emailed Donchez: "We have an urgent situation with Yoomi! WHY is it YELLOW? The cloudiness was explained by [the] Quality Control Supervisor, but this isn't cloudy . . . it's yellow! We need an explanation ASAP. It's very likely we will need to issue a recall at store level." Doc. 138-13. The email also attached the image of a bottle of Yoomi hand sanitizer with yellow liquid. *Id.* Yoomi purports to have immediately brought the yellowing problem to the attention of Anvyl but that Avyl failed to take any meaningful steps to rectify the situation in a timely manner. ¶ 50

On June 29, 2020, VitalPure inspected product samples and concluded that the sanitizer had indeed turned yellow.[10] ¶¶ 28, 45. Shortly thereafter, Albertsons directed its 2,200 stores to remove a total of 212,113 bottles of yellowed Yoomi hand sanitizer from their shelves. ¶ 47. Albertsons also recalled and rejected 324,352 bottles of Yoomi hand sanitizer that had not yet been distributed. *Id*. According to the SAC, the cost to Yoomi to recall the Albertsons Order totaled approximately $806,029,40, and the lost value of the hand sanitizer returned by Albertsons was approximately $1,232,537.60. ¶ 48.

---

[10] Anvyl alleges upon information and belief that the hand sanitizer turned yellow because of a design or manufacturing defect caused by Legacy Chemical (the company that provided the polymer used by VitalPure to make the hand sanitizer), Feel Well, or VitalPure. ¶¶ 30, 46, 54, 91.

Yoomi contends that the yellowed and late-delivered bottles ruined its relationship with Albertsons. ¶ 51. Ultimately, Anvyl and VitalPure delivered only 70% of the Albertsons Order, each bottle arrived late, each had the wrong caps, many of the boxes were packed with an incorrect number of bottles, and hundreds of thousands of bottles contained yellowed sanitizer. ¶ 52. Albertsons cancelled all future purchase orders from Yoomi and has since stopped doing business with Yoomi.[11] ¶ 51.

Yoomi alleges that after the recall, other retailers would not do business with them. Ultimately, Yoomi's hand sanitizer venture failed. ¶ 60.

### *The Modified Email*

On September 23, 2020, Eric Friedberg of CFA emailed Albertsons, requesting a copy of the June 18, 2020 email from Woerner, of Albertsons, to Donchez in which Albertsons cancelled its outstanding Yoomi orders, Doc. 138-3, the "Original Email." Doc. 138-4, the September 23, 2020 email from Friedberg to Albertsons. Albertsons sent Friedberg a copy of the Original Email that day. *Id*. The Original Email consisted of three bullet points, stating why Albertsons was cancelling the remaining product orders:

> As discussed, we do want to cancel all outstanding orders with Yoomi for the following reasons:
>
> - Product is 3 weeks late
> - All [purchase order] and location changes
> - Product selling extremely slow at store level

Doc. 138-3. Friedberg then forwarded the Original Email to Bradley, CEO of Yoomi, and Jonathan Plaut, counsel to Yoomi, but modified it by adding three words to it, as explained below. *See* Doc. 138-5, the "Modified Email."

---

[11] In addition, BD ended its relationship with Yoomi after 35,328 bottles of hand sanitizer were delivered late. ¶¶ 58–59.

7

In modifying the Original Email, Friedberg added the words "due to yellow" at the end of the third bullet point so that the modified sentence stated: "Product selling extremely slow at store level due to yellow." *Id.* The words he added are in the same black typeface and font size as the original text. *Id.* However, Friedberg digitally highlighted the language he added in yellow as shown below. *Id.*

> As discussed, we do want to cancel all outstanding orders with Yoomi for the following reasons:
>
> - Product is 3 weeks late
> - All [purchase order] and location changes
> - Product selling extremely slow at store level due to yellow

*Id.*; *see also* Doc. 143, Declaration of Eric Friedberg in Opposition to the Motion for Sanctions ("Friedberg Decl."), at 1, ¶ 3 ("I forwarded this e-mail to Bradley and added 'due to yellow' in yellow highlighting as a way of commenting the reasons why, in my opinion, customers did not want to buy the product. I was not attempting to 'fool' anyone that [Albertsons' representative] had said that herself. Further, I highlighted my own language as a way to set it off from the text of the original email.").

In response to the Modified Email, Bradley replied: "Perfect, thanks Eric as it further supports our case." Doc. 138-5.

### *The Instant Action*

Yoomi filed the instant action two days later, on September 25, 2020. Doc. 7. Yoomi subsequently filed an amended complaint on October 8, 2020, Doc. 9., and the SAC on March 9, 2021, Doc. 78. Doc. 64. On September 22, 2021, the Court, ruling on a 12(b)(6) motion filed by Anvyl, dismissed the claims of fraud, fraudulent inducement, negligent misrepresentation, tortious interference, and punitive damages for failure to state a claim with prejudice as to all defendants. Doc. 106. The following claims survived: (1) breach of contract and implied

8

covenants of good faith and fair dealing against Anvyl, VitalPure, Feel Well, and Legacy; (2) breach of express warranty against Anvyl; and (3) breach of implied warranty against Anvyl, VitalPure, Feel Well, and Legacy.[12] *Id.*

*Discovery*

On January 22, 2021, Anvyl served Yoomi with a first request for the production of documents. *See* Doc. 138-7. Relevant here, Anvyl sought "[a]ll [d]ocuments concerning any decision by Albertsons . . . to purchase or not purchase . . . hand sanitizer from [Yoomi]." Doc. 138-7 at 6. This request asked that the documents be produced with the associated metadata for the records. *Id.* at 14.

On February 24, 2021, Yoomi served Anvyl with the responses and objections to the document request. *See* Doc. 138-8. The responses provided that "Yoomi agree[d] to provide all non-privileged documents in its possession, custody or control responsive to each of [the] requests," subject to certain general objections and limitations not here relevant; that "[a]ll said documents," would be provided via Dropbox; and that "[t]hese documents [would be] provided as they are kept in the usual course of business, pursuant to Fed. R. Civ. P. 34(b)." *Id.*

In response to the request for production, on March 8, 2021, Yoomi produced approximately 1,100 documents as standalone PDF files without any metadata (the "First Production"). *See* Doc. 137 at 9. Included in this production was a PDF version of the Modified Email, identified as "2020-09-23 from Albertsons cancelling [purchase orders]." *See* Doc. 138-10. Yoomi produced the Modified Email without the balance of the September 23, 2020 email

---

[12] Previously named defendant MCTRON Technologies, LLC filed its own motion to dismiss on June 12, 2021, pursuant to Rule 12(b)(2). Doc. 102. MCTRON is the company that manufactured the polymer that Legacy produced to VitalPure to make the sanitizer. ¶ 30. In the September 22, 2021 Order, the Court dismissed MCTRON from this action for lack of personal jurisdiction. Doc. 106. The Court also dismissed previously named defendant Rodney Manzo, who served as the chief executive officer of Anvyl, for failure to state a claim against him. *Id.*

chain of which it was a part, *i.e.*, without indicating that Friedberg had forwarded the email to Bradley and Plaut, and without including Bradley's response: "Perfect, thanks Eric as it further supports our case," *see* Doc. 138-5. *Id*. The added language, "due to yellow," was still highlighted in yellow. *Id*. The Original Email was not, however, included in this production.

Two months later, on June 6 and 8, 2022, Yoomi and CFA produced approximately 50,000 additional documents,[13] this time with metadata.[14] Doc. 137 at 10. Anvyl claims that included in this production were "email exchanges between [] Friedberg, [] Bradley, and [] Plaut that reveal[ed] how the [Modified] Email in Yoomi's initial production came about." Doc. 137 at 10.[15] According to Anvyl, the metadata contained in this production revealed that Plaut: (1) copied the Modified Email and pasted it into a Microsoft Word document; (2) deleted the text of the email exchange between himself, Bradley, and Friedberg, leaving only the Modified Email, by itself; and (3) saved the Word version as a PDF file, which was then produced to Anvyl. The

---

[13] According to Anvyl, at some point between March 8 and June 6, 2021, Albertsons produced a copy of the Original Email. *See* Doc. 137 at 10 (noting that the June 6 and 8, 2022 productions were made *after* Albertsons had already produced a copy of the Original Email to Anvyl). The parties do not, however, specify the date of Albertsons' production.

Moreover, Anvyl states that Yoomi knew that the Original Email was included in Albertsons' production but fails to provide evidence to substantiate this claim. *See id.* (conclusively stating that "Yoomi and CFA knew their attempted fraud had failed" once Albertsons produced the Original Email).

Additionally, Anvyl alleges that Yoomi produced the Original Email at some point after Albertsons' production. *See id.* at 12 ("The Original Email was . . . only produced by Yoomi after [it] learned that Anvyl had obtained it directly from Albertsons."). But neither party clearly specifies whether Yoomi included the Original Email in the June 6 and 8, 2022 productions or in a later, separate production.

[14] When Plaut sent Anvyl this second production, he stated: "If you happen to find any e-mails which contain the word 'Plaut', or correspondence to/from any other attorneys, those would constitute inadvertent disclosures, and we ask that you discard those and inform us of same." *See* Doc. 138-11.

[15] Anvyl does not provide further detail about these "email exchanges," including whether they are distinct from the September 23, 2020 email chain.

10

Word document had the same title as the previously produced PDF file, "2020-09-23 from Albertsons cancelling [purchase orders]." *See* Doc. 138-12.[16]

On June 22, 2022, Anvyl raised the issue of the alleged forgery to Yoomi via letter.[17] *See* Bradley Decl. at 2, ¶ 5. That same day, Yoomi invited Anvyl to depose Friedberg on an expedited basis. But Anvyl declined the offer. *Id.*

On July 29, 2022, Tollefson was deposed. During her deposition she was asked why the hand sanitizer was "selling extremely slow at store level," (quoting from the Original Email) and she answered: "In comparison to the other products, it was moving at a lower rate, and as a customer goes to the shelf and if the product is – they have choices, and if the product is not matching the rest of what is in the available offering, they would not select that." Doc. 147, Deposition Transcript of Tami Tollefson, at 24:22–25:7.

### *The Instant Motion*

Before the Court is Anvyl's motion for sanctions against Yoomi for defrauding the Court by modifying the Original Email and certifying its authenticity in violation of Federal Rule of Civil Procedure 26(g). Doc. 136. Specifically, Anvyl requests that the Court dismiss the SAC in its entirety and award Anvyl attorney fees and costs associated with this motion. *See id.*; Doc. 137 at 6. For the reasons set forth below the motion is DENIED.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 26(g) requires an attorney to sign every document production made during the course of discovery.

---

[16] Doc. 138-12 is an exhibit filed by Anvyl in support of the motion for sanctions, identified as "Plaut Word Document and Metadata." This exhibit consists of a copy of the Modified Email, along with one page of document metadata. The metadata shows the file size, pages count, word count, total editing time (1 minute), and that Plaut edited the document on September 24, 2020 at 8:51 a.m. Doc. 138-12 at 4.

[17] This letter is not currently before the Court.

11

> By signing, [the] attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after reasonable inquiry [that the production is]: . . . complete and correct as of the time it is made; . . . consistent with existing law[,] . . . [and] not interposed for any improper purpose[.]
>
> If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer . . . . The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(1), (3).

A court may also sanction a party for perpetrating fraud on the court in violation of Rule 26(g), pursuant to its inherent powers. *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (citation omitted). "The essence of fraud on the court is when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *Passlogix, Inc. v. 2FA Tech., Inc.*, 708 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (citations and marks omitted). "Fraud on the court must be established by clear and convincing evidence." *Shangold v. Walt Disney Co.*, No. 03 Civ. 9522 (WHP), 2006 WL 71672, at *5 (S.D.N.Y. Jan. 12, 2006), *aff'd,* 275 F. App'x 72 (2d Cir. 2008).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). And "[i]n the discovery context, that discretion should be exercised with even more restraint than usual." *Yukos* 977 F.3d at 235. "Dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness," and should be employed only when a court is "sure of the impotence of lesser sanctions." *Dodson v. Runyon*, 86 F.3d 37, 39, 42 (2d Cir. 1996) (citation and marks omitted). In determining sanctions based on discovery misconduct, courts consider willfulness, duration of non-compliance, whether the non-compliant party had been warned of the consequences of non-

12

compliance, and the efficacy of lesser sanctions.  *Dragon Yu Bag Mfg. Co. v. Brand Sci., LLC*, 282 F.R.D. 343, 345 (S.D.N.Y. 2012).

**III.   DISCUSSION**

Anvyl argues that Yoomi defrauded the Court by:  (1) altering the text of the Original Email; (2) producing the Modified Email in a manner that made it appear that it was the Original Email; (3) withholding the Original Email from Anvyl until learning that Albertsons had produced the Original Email; and (4) falsely representing that it produced the documents in the First Production "as they [were] kept in the usual course of business," *see* Doc. 138-8.

Courts in this District have imposed sanctions when clear and convincing evidence establishes that a plaintiff purposefully fabricated, and produced evidence central to his case, and then made misrepresentations to the Court about the authenticity of that evidence.  Two Second Circuit cases illustrate this approach.

In *ComLab, Corp. v. Kal Tire*, the plaintiff, in support of its breach of contract action, produced twenty hardcopy printouts of invoices—each purporting to charge a $20,000 monthly service fee—that it alleged to have emailed to the defendant.  815 F. App'x 597, 600 (2d Cir. 2020).  The plaintiff claimed that it could not produce the original digital versions of the files because they had been destroyed by a computer virus.  *Id.* at 600–01.  The plaintiff restated this claim during a deposition.  *Id.*  At an evidentiary hearing, however, the district court determined by clear and convincing evidence that the plaintiff fabricated sixteen of the twenty invoices.  *Id.* at 600.  The Court also determined that the plaintiff subsequently purged its computer server to prevent discovery of the fraud, thereby spoliating evidence critical to the defense.  *Id.*  The Second Circuit affirmed the district court's dismissal of the case on the defendant's motion for

sanctions in light of the seriousness of the plaintiff's transgression, and the significance of the documents to the litigation. *Id*. at 602.

Similarly, in *Shangold*, the Second Circuit affirmed a district court's dismissal of a case after the defendants had established that the plaintiffs had submitted fraudulent evidence to bolster their copyright infringement claim. 275 F. App'x at 73–74. Specifically, the plaintiffs forged a storyline proposal, which the district court described as the "linchpin" of plaintiffs' misappropriation theory. 2006 WL 71672, at *5. The Second Circuit explained that sanctions were warranted because the plaintiffs had submitted tainted evidence at the core of the dispute; offered false testimony to bolster their claims and continue the fraud; made repeated false statements, which showed willfulness and bad faith; and caused significant costs to defendants. 275 F. App'x at 73–74 (2d Cir. 2008); *see also Esposito v. Suffolk County Community College*, 517 F. Supp. 3d 126, 135 (E.D.N.Y. 2021) (dismissing a similar case for the same reasons set forth in *Shangold*, and noting that "plaintiff's broad, unmitigated wrongdoing ha[d] rendered impossible any effort to effect an orderly and expeditious disposition") (marks omitted); *Lawrence*, 2018 WL 3611963, at *1 (dismissing the case on defendant's motion for sanctions where plaintiff produced photographs showing damage to her apartment that she claimed were taken shortly after it had been damaged by police officers, when in fact the photographs were staged, taken almost one year later).

### *Fraudulent Intent in Creating the Modified Email*

In contrast to the aforementioned cases, the Court, here, cannot conclude by clear and convincing evidence that non-party Friedberg tampered with the Original Email with fraudulent intent.

With respect to motive, Anvyl argues that Friedberg had "every incentive" to create the Modified Email to distort the message of the Original Email: that Albertsons cancelled the order "because of a lack of demand," and not because of any yellowing. *See* Doc. 137 at 16. Anvyl asserts that the yellowing could not have played any role in Albertsons' decision to cancel because the retailer did not learn of the discoloration until ten days after the Original Email, as shown by the June 28, 2020 email. *See* Doc. 138-6 (Weeks writing "That's awful! I haven't seen that one before," in response to a photo of the yellowed sanitizer).

While the fabricated evidence in *ComLab* and *Shangold* provided the backbone of the plaintiffs' actions, Yoomi's case does not depend on whether the yellow sanitizer factored into Albertsons' decision to cancel the outstanding orders. The June 18, 2020 Original Email did not state that Albertsons cancelled the orders *only* because the product sold slowly. Rather, it gave three reasons for canceling: (1) the shipments were late; (2) the purchase order and location changes; and (3) the product was selling extremely slow in stores. Doc. 138-2. With respect to the shipment delays, Yoomi alleges a variety of reasons for why defendants are to blame, including that Anvyl failed to timely obtain proper labels, trays, bottle caps, and an FDA National Drug Code. ¶¶ 34–37. Anvyl does not address any these allegations in either its memorandum in support of the motion, or in its reply memorandum. Rather, Anvyl argues that it will show at trial that the product was late due to Yoomi's delay in issuing purchase orders and providing payment to Anvyl. Doc. 137 at 16 (citing Docs. 138-15 and 138-14, the May 21, 2022 emails). Ultimately, Anvyl may well be able to prove that Yoomi caused the late shipments, but this possibility does not constitute clear and convincing evidence that Friedberg therefore forged the email.[18]

---

[18] Relatedly, Yoomi also argues that *Anvyl* caused the slow sales by manufacturing cloudy hand sanitizer that did not appeal to consumers. The record shows that by June 8, 2020, Anvyl had delivered to Albertsons bottles of hand

15

Additionally, the record contains ample evidence that the sanitizer *did* yellow and that the yellowing caused the recall. *See e.g.*, Doc. 138-13. (Tollefson writing to Weeks: "Yes pls[.] I would like to recall their product if they can't provide an explanation [for the yellowed sanitizer]."); *see also* ¶ 47 (Albertsons recalled 212,113 bottles of yellowed Yoomi hand sanitizer from their shelves and thereafter rejected 324,352 bottles of Yoomi hand sanitizer that they had received but not yet been distribute.). Yoomi's claims stem at least in part from the recall. Again, this fact weighs against a finding that Friedberg was necessarily motived by fraud, since he had reason to believe that Yoomi had valid claims against Anvyl, irrespective of whether the Original Email specified "due to yellow." *See* Friedberg Decl. 1, ¶ 3 ("[T]he cloudiness and yellowing was only one part of Anvyl's failures in production.")

What's more—and unlike the plaintiffs in the cases relied upon by Anvyl—Friedberg offers a reasonable explanation for why he modified the Original Email: to comment on a theory that would help Yoomi's case. According to his affidavit:

> On or about September 23, 2020, I forwarded this e-mail to Bradley and added "due to yellow" in yellow highlighting as a way of commenting the reasons why, in my opinion, customers did not want to buy the product. I was not attempting to "fool" anyone that [] Woerner had said that herself. Further, I highlighted my

---

sanitizer that contained a cloudy, opaque substance. *See* Bradley Decl. at 3, ¶ 9 (quoting a June 8, 2020 email from Weeks to Donchez: "What is going on with all of the various stages of clarity of the product?? Is it safe? Need to be recalled?"); *see also id.* at 61, Ex. 3. (quoting a June 8, 2020 email from Davis to Hoar: "[Albertsons has] a product that is clear, hazy, and opaque."); *id.* (quoting a June 8, 2020 email from Manzo to Hoar: "Albertsons is saying they are going to pull this order [because of the cloudiness]."). During her deposition, Tollefson suggested that the Yoomi sanitizer sold slowly because of its cloudiness or discoloration. *See, e.g.*, Tollefson Dep. Tr. at 24:22–25:7 ("In comparison to the other products, it was moving at a lower rate, and as a customer goes to the shelf and if the product is – they have choices, and if the product is not matching the rest of what is in the available offering, they would not select that."). The fact that Anyl may be at fault for why the hand sanitizer sold slowly further shows that Yoomi's case does not hinge on whether Albertsons canceled the orders because of the yellowing.

With respect to the second reason for cancellation, Anvyl argues that the "[purchase order] and location changes" were due to CFA's broker submitting incorrect purchase orders. The Court need not resolve this question for purposes of deciding this motion; as discussed, Yoomi had adequate basis to believe that Anvyl was to blame for the June 18, 2020 cancellation, irrespective of whether Yoomi was responsible for the "[purchase order] and location changes."

> own language as a way to set it off from the text of the original email. It did not
> once occur to me that anyone would interpret my yellow highlighting as a forgery.

Friedberg Decl. at 1, ¶ 3. To be sure, Friedberg could have done a better job distinguishing his commentary from the original text. But had Friedberg's intent been to defraud, it would have made little sense from him to draw attention to his supposed forgery by highlighting it in yellow.

For the foregoing reasons, Anvyl has failed to show by clear and convincing evidence that Friedberg acted with fraudulent intent.

### *Fraudulent Intent in Producing the Modified Email*

Clear and convincing evidence also does not substantiate the claim that Yoomi produced the Modified Email with intent to defraud.

While the parties do not dispute that Yoomi produced the Original Email after the Albertsons production—or that the Modified Email was produced as a standalone PDF file, and not as part of the more extensive September 23, 2020 email chain—Yoomi nonetheless argues that its failure to produce the Original Email reflects not malice, but rather resulted from the complexity of discovery in this case. *See* Doc. 142 at 2. Yoomi explains that this action involves hundreds of thousands of PDFs, emails, photos, and documents; various third-party subpoenas; and several information-technology contractors—all of which could have caused an "unintentionally incomplete production of documents." *See* Doc. 142 at 2.

Furthermore, and in contrast to cases relied upon by Anvyl where courts have found fraud, Yoomi has not once denied that Friedberg modified the Original Email. *See, e.g., ComLab, Corp.*, at 600–01 (noting that the plaintiff lied during his deposition about the authenticity of fabricated materials). Rather, upon learning about the differences between the Original and Modified Emails, Yoomi invited Anvyl to depose Friedberg, but Anvyl declined the offer. *See* Bradley Decl. at 2 ¶ 5.

17

For the foregoing reasons, the Court cannot conclude that Yoomi committed fraud by producing the Modified Email and for its delay in producing the Original Email. In light of all of the Court's findings, sanctions are not warranted.

## IV. CONCLUSION

For the foregoing reasons, Anvyl's motion for sanctions is DENIED. The Clerk of Court is respectfully directed to terminate the motions, Doc. 136 and 139.

It is SO ORDERED.

Dated:   February 3, 2023
        New York, New York

                                                      Edgardo Ramos, U.S.D.J